(121 App. Div. 395.)

### BIRCH v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. MUNICIPAL CORPORATIONS—MAINTENANCE OF PIERS—DEFECTS—LIABILITY.

A city acquiring under Laws 1894, p. 1903, c. 758, as amended by Laws 1895, p. 1946, c. 931, a pier, and permitting the use thereof by the public, must keep it in a reasonably safe condition, and it is not relieved from liability for injuries in consequence of its defective condition by failing, since the acquisition thereof, to do anything to keep it in a reasonable condition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1806.]

2. NEGLIGENCE—WHAT CONSTITUTES.

Negligence is the violation of duty by omission or commission, which creates a menace, and when it becomes effective by causing injury to a blameless person liability follows.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 1, 2.]

Woodward and Jenks, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Gustaf Birch, as administrator of Emil Birch, deceased, against the city of New York. From a judgment of dismissal at the close of the case of plaintiff, he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Isaac M. Kapper, for appellant.
James D. Bell, for respondent.

HIRSCHBERG, P. J.　The plaintiff's intestate, a boy 17 years of age, was on a tugboat on the night of July 26, 1903, taking a pleasure sail.　When the captain of the tug desired to put the passengers ashore, the water was so rough that he did not deem it safe to land them by means of certain small boats in which they had come to the tug.　He landed them at a pier on the shore of the East river belonging to the defendant, and, when the plaintiff's intestate stepped upon the pier, he went through a hole occasioned by the absence of a plank, and was drowned.　The boy had never been on the pier before, and knew nothing about its condition so far as the evidence shows.　The night was described by one of the witnesses as being "pretty dark."

I think there was sufficient in the case to require the submission to the jury of the question of the defendant's negligence.　The pier was acquired by purchase under the provisions of chapter 758, p. 1903, Laws 1894, as amended by chapter 931, p. 1946, Laws 1895.　It is unnecessary to refer in detail to the legislation further than to say that it provided for the selection, laying out, construction, and maintenance by cities having a population in excess of 800,000 of a public driveway and parkway and the acquisition of riparian rights, public places, wharves, piers, and appurtenances in connection therewith.　As the case is presented, it is undisputed that from the time of the acquisition by the defendant of the pier in question and its approaches, covering a period of many years, nothing whatever was done by the defendant to keep it in reasonable condition for public use, and that during all that time the public was permitted with the defendant's knowledge to use it so far as it could be used without restriction.　It was used constantly and openly by parties fishing and swimming or enjoying pleasure excursions, and it was also used occasionally by contractors in landing materials under permit from the city authorities.　The evidence is ample to justify a jury in concluding that a tragedy such as has occurred was reasonably to be expected.

It needs no citation of authorities to show that in the circumstances stated the duty rested on the municipality to keep all its property while in public use in a condition of reasonable safety.　I do not understand that the dismissal of the complaint was based upon a denial of such duty, but was rather based upon the fact that the structure was so delapidated as in itself to place upon any one using it the burden of the assumption of the risk in so doing.　The learned Trial Court said:

"I conceive plainly why the city should be responsible in a measure, at least for care to see to it that a pier so situated and used is safe, but here is a ruinous old-tumbled down structure built nobody knows when, but it has been ruinous for 10 years.　There has been no attempt to repair it.　The evidence here would not warrant anybody in concluding that it had ever been held out to the public or to anybody as a safe place, or a place that might be used for any purpose, and there is certainly no public road to it."

I do not think there is any support in law for the proposition that a municipal corporation can obtain immunity by reason merely of the great length of time during which it has permitted its property to become and to be ruinous, or that it could acquire such immunity by reason of the great extent of the risk and danger thus occasioned.　Negligence in law is the violation of duty by an omission or a commission

which creates a menace, and, when the menace becomes effective by causing injury to a blameless person, liability necessarily follows. It seems illogical to say that, if the city had done anything in discharge of its admitted duty to try and make this tumble-down structure safe, it would have been liable, but that, inasmuch as it has done nothing whatever in that regard, it is to be held exempt.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur, except WOODWARD and JENKS, JJ., dissent.

WOODWARD, J (dissenting). Plaintiff's intestate, a boy 17 years of age, on the 26th day of July, 1903, went out with a party in a tugboat for a pleasure excursion. The party boarded the tug by means of rowboats, but, on returning, the water was rough, and the captain of the boat landed at a pier on the shore of the East river, the property of the defendant. Plaintiff's intestate stepped out upon the dock, took a step forward, and disappeared through a hole in the dock. He was not again seen alive. From a judgment of nonsuit the plaintiff appeals to this court.

The dock in question was originally owned by private parties. It was purchased under legislative authority by the county of Kings for the purpose of constructing what was known as the "Shore Road," and subsequently came into the ownership of the defendant through the provisions of the Greater New York charter. The pier in question has not been held out as a public pier at any time since it came into the ownership of the defendant or its immediate predecessor in title. It appears to have been left substantially as it existed at the time the property was purchased from the original owner, subject to the action of the elements, and with no purpose on the part of either of the municipalities to make any use of it as a dock or for public purposes. It came into the ownership of the defendant merely as an incident to its parkway system, and was apparently considered of no practical utility, and the fact that persons have fished from this dock, or that two contractors, under permits from the park commissioners, have used the dock for a temporary purpose, does not constitute this a public dock, nor does it hold out an invitation for its use by the public. Under the facts disclosed by the evidence, there was no liability on the part of the defendant, and the nonsuit was properly granted.